ALEX G. TSE (CABN 152348)
Acting United States Attorney
BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division
KAREN BEAUSEY (CABN 155258)
Assistant United States Attorney

 450 Golden Gate Avenue, Box 36055
 San Francisco, California 94102-3495
 Telephone: (415) 436-6598
 FAX: (415) 436-7234
 Karen.Beausey@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br> Plaintiff,<br><br>v.<br><br>$138,845 in United States Currency,<br><br> Defendant. | CASE NO.<br><br>**VERIFIED COMPLAINT FOR FORFEITURE**<br>**_IN REM_** |

 The United States of America, by its attorneys, Alex G. Tse, United States Attorney, and Karen Beausey, Assistant United States Attorney for the Northern District of California, brings this complaint and alleges as follows:

## NATURE OF THE ACTION

 1. This is a judicial forfeiture action, as authorized by Title 21, United States Code, Section § 881(a)(6), involving the seizure and forfeiture to the use and benefit of the United States of America the following property:

 $138,845 in United States Currency seized by law enforcement officers from Semyon Levitan on or about November 3, 2017;

(hereinafter, "Defendant Property"), as property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of a violation of 21 U.S.C. §§ 841 and/or 846, and thereby forfeitable pursuant to 21 U.S.C. § 881(a)(6).

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355, and 21 U.S.C. § 881(a)(6).

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1355 and 1395 because the acts or omissions giving rise to the forfeiture occurred in this district and the Defendant Property is located in this district.

4. Intra-district venue is proper in the San Francisco within the Northern District of California.

## PARTIES

5. Plaintiff is the United States of America.

6. The Defendant Property consists of $138,845 in United States Currency seized by law enforcement officers from Semyon Levitan on or about November 3, 2017.

## FACTS

7. On November 3, 2017, Semyon LEVITAN presented himself and his carry-on luggage (a black duffle bag) for screening at a TSA a security checkpoint at John F. Kennedy International Airport in New York. LEVITAN was traveling from JFK to San Francisco, California, JetBlue flight #15. During the screening, TSA personnel discovered a large amount of United States currency wrapped in a plastic bag and placed among clothing in LEVITAN's duffle bag. LEVITAN informed the TSA personnel that he had approximately $40,000 with him. LEVITAN was allowed to proceed to his flight with his carry-on baggage and the $40,000 in United States currency.

8. TSA related the above information to DEA Special Agent Cheryl Iacuto in New York.

SA Iacuto was also provided with a physical description of LEVITAN (older white mail, about 5'11" tall, with black hair and a medium build) and with a description of the clothing he was wearing (black sweatpants, black sweatshirt, a grey t-shirt and "Prada" shoes).

9. SA Iacuto, in turn, contacted DEA Task Force #2 at the San Francisco International Airport and forwarded the information and descriptions she had received from TSA.

10. DEA Task Force Agent Duane Fisher received SA Iacuto's information. He examined flight information for JetBlue flight #15 and learned it was scheduled to arrive at SFO at approximately 10:19 a.m. at gate 11B in the international airport terminal.

11. TFA Fisher and TFA Ariana Daggett established surveillance near gate 11B in anticipation of LEVITAN's arrival on flight #15. At approximately 10:23 a.m., TFAs Fisher and Daggett observed a man matching the physical and clothing description provided by SA Iacuto exit the jetway carrying a black duffle bag. TFAs Fisher and Daggett followed the man (later identified as LEVITAN) as he walked to baggage carousel #12. LEVITAN checked the carousel, saw there were no bags on the carousel, and walked outside to smoke a cigarette. A few minutes later, at approximately 10:40 a.m., he returned to the baggage claim area, retrieved a black roller suitcase from carousel #12, and exited the area with the black roller suitcase and the black duffle bag. TFAs Fisher and Daggett observed LEVITAN appeared calm and to be familiar with the airport.

12. As LEVITAN exited the airport (just outside the doors), TFAs Fisher and Daggett called his name "Semyon" to get his attention. TFAs Fisher and Daggett identified themselves as law enforcement agents, showed LEVITAN their credentials, and asked if he was Semyon LEVITAN. LEVITAN confirmed that he was, and (in response to TFA Fisher's request) provided his New York State driver's license as proof of his identity.

13. TFA Fisher informed LEVITAN that he was not under arrest or in any trouble and that he was free to leave, and asked LEVITAN if they could talk with him. LEVITAN said yes and they all

moved to the side of the doorway outside the baggage claim area.

14. TFA Fisher asked LEVITAN if he had traveled to San Francisco for business or for pleasure. LEVITAN replied he was in the Bay Area looking at houses to buy, and that he planned to stay "about four days." LEVITAN stated his son had purchased his airline ticked a few days prior for $470, and that he did not have a return ticket yet. LEVITAN stated he had never been arrested, and that he was not in possession of any illegal narcotics. TFA Fisher and Daggett noticed LEVITAN became visibly nervous, that his hands were shaking, his voice began to crack, he began to stutter, and he began sweating to the point of continuously wiping his face. The temperature outside the baggage area that morning was very cool.

15. TFA Fisher asked LEVITAN for consent to search his black roller suitcase and black duffel bag. LEVITAN said "yes," moved his roller suitcase and duffle bag in front of TFA Daggett, and unzipped the bags. LEVITAN also stated that both bags were his and that he had packed them. TFA Daggett searched the suitcase and located a large amount of US currency, which was wrapped first in a white plastic bag, then in a black plastic bag, and then in a puffy jacket. The currency was bundled with rubber bands in multiple stacks. TFA Fisher asked how much US currency was in LEVITAN's possession, and LEVITAN replied "about $100,000." TFA Fisher asked if LEVITAN had any currency in the black duffle bag, and LEVITAN stated he did, "$47,000." TFA Daggett located the currency in the black duffle bag. It was also bundled with rubber bands in several stacks. TFA Fisher and Daggett noticed LEVITAN was now sweating very heavily.

16. TFA Fisher asked LEVITAN why he was carrying large amounts of money, and LEVITAN began to stammer and stated he might put down a down payment on a house for his son. When asked where the money had come from, LEVITAN said he sold his house about ten years prior. LEVITAN stated he did not have a real estate agent, that he did not have an address of a property he was looking to buy, and that he "was just looking around the Bay Area." TFA Fisher asked LEVITAN if he

4

had a hotel reservation or rental car reservation, and LEVITAN said he did not, and that he was being picked up by his son's friend "Allen" and would be driving around with "Allen." However, LEVITAN was not able to provide "Allen's" full name or his phone number. When asked how long he would be staying with "Allen," LEVITAN said he did not know. TFA Fisher asked LEVITAN how he was going to use the money for a down payment on a house if he didn't have a realtor, didn't have an address for a house he planned to look at, and was only staying in the area for a few days. LEVITAN could not provide an answer, but said he was also thinking of traveling to Las Vegas. When asked if he had flight or hotel reservations to go to Las Vegas, LEVITAN said no, that he "would probably rent a car." LEVITAN said he did not gamble large amounts of money, and that the last time he was in Las Vegas was five years ago.

17. TFA Fisher asked LEVITAN when he sold his house, and LEVITAN stated he had done so in 2005 for "about $100,000" and had put the money in the bank. When asked whether he could provide bank records from the transactions, LEVITAN stammered and said, "I don't think so, it was so long ago." When TFA Fisher asked why, after having the money from the sale of his house for twelve years, LEVITAN would now bring it all to the Bay Area in cash, packed in luggage, LEVITAN stammered, looked extremely nervous, and sweated profusely, but was unable to give an answer.

18. When asked what he did for a living, LEVITAN sated he was a driver for Uber, Lift, and Juna, and that he made $100,000 a year. LEVITAN stated that was his only source of income. He stated he paid $2000 a month in rent for his house, and that he lived there with his wife – who worked at a hospital – and other family members, and that nobody else contributed to the household. When asked how much income LEVITAN had claimed on his 2016 tax return, LEVITAN said he claimed $22,000, and that he filed singly because he and his wife were legally separated.

19. TFA Fisher informed LEVITAN that the money located in LEVITAN's luggage was going to be detained as suspected drug proceeds pending further investigation. LEVITAN then changed

5

his story and stated he also got money and help from his brother and family; however, he did not provide the names of any of those family members.

20. The currency from LEVITAN's luggage was sealed in a DEA evidence bag by TFA Fisher and witnessed by TFA Daggett and by LEVITAN. LEVITAN signed the evidence bag as the owner/possessor of the money and a DEA 12 receipt for the seized currency, as witnessed by the TFAs. The money was then transported back to Task Force #2 by TFAs Fisher and Daggett.

21. Earlier that morning, TFA Daggett had her certified drug detection canine "Ryker" clear an area in Terminal #3 where a number of items were located, and Ryker did not alert the odor of narcotics in the area. At approximately 11:10 a.m., TFA Daggett placed the evidence bag containing currency seized from LEVITAN in that area had Ryker conduct an off leash systematic search of the area. Ryker alerted to the bag containing the seized currency, indicating that the odor of nacrotics was emanating from the currency.

## CLAIM FOR RELIEF

22. The United States incorporates by reference the allegations in paragraphs 1 through 21 as though fully set forth herein.

23. Title 21, United States Code, Section 841(a) prohibits the manufacture, distribution, or dispensing, and possession with the intent to distribute a controlled substance.

24. Title 21, United States Code, Section 881(a)(6), provides, in part, for the forfeiture of all moneys, securities or other things of value furnished or intended to be furnished to a person in exchange for a controlled substance, all proceeds traceable to such an exchange, and all moneys and securities used or intended to be used to facilitate any violation of Title 21, United States Code, Chapter 13, Subchapter I, including violations of Title 21, United States Code, Sections 841(a) and 846.

25. In light of the foregoing, and considering the totality of the circumstances, there is probable cause to believe that the Defendant Property represents proceeds traceable to money, securities

or other things of value furnished to a person in exchange for a controlled substance, in violation of Title 21, United States Code, Sections 841(a) and 846, and thus subject to forfeiture under Title 21, United States Code, Section 881(a)(6).

WHEREFORE, plaintiff United States of America requests that due process issue to enforce the forfeiture of the Defendant Property; that notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; and that judgment of forfeiture be entered; that the Court enter judgment forfeiting the Defendant Property; and that the United States be awarded such other relief as may be proper and just.

DATED: May 31, 2018                        Respectfully submitted,

                                                            ALEX G. TSE
                                                            Acting United States Attorney

                                                            /s/
                                                            KAREN BEAUSEY
                                                            Assistant United States Attorney

## VERIFICATION

I, Task Force Agent Duane M. Fisher, state as follows:

1. I am a Task Force Agent with the United States Drug Enforcement Administration. I am a case agent assigned to this case. As such, I am familiar with the facts and the investigation leading to the filing of this Complaint for Forfeiture.

2. I have read the Complaint and believe the allegations contained therein to be true.

\* \* \* \* \*

I declare under penalty of perjury that the foregoing is true and correct. Executed this 31 day of May, 2018, in San Francisco, California.

_____
Duane M. Fisher, Task Force Agent
Drug Enforcement Administration

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

UNITED STATES OF AMERICA

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
AUSA KAREN BEAUSEY
450 GOLDEN GATE AVE., 9TH FL.
SAN FRANCISCO, CA 94102

**DEFENDANTS**

$138,845 in United States Currency

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- [x] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff (For Diversity Cases Only) and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [x] 625 Drug Related Seizure of Property 21 USC § 881 | 422 Appeal 28 USC § 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury – Product Liability | 690 Other | 423 Withdrawal 28 USC § 157 | 376 Qui Tam (31 USC § 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **LABOR** | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | 710 Fair Labor Standards Act | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment Of Veteran's Benefits | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 720 Labor/Management Relations | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | **PERSONAL PROPERTY** | 740 Railway Labor Act | 835 Patent—Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | 370 Other Fraud | 751 Family and Medical Leave Act | 840 Trademark | 460 Deportation |
| | 350 Motor Vehicle | 371 Truth in Lending | 790 Other Labor Litigation | **SOCIAL SECURITY** | 470 Racketeer Influenced & Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | 791 Employee Retirement Income Security Act | 861 HIA (1395ff) | 480 Consumer Credit |
| 160 Stockholders' Suits | 360 Other Personal Injury | 385 Property Damage Product Liability | | 862 Black Lung (923) | 490 Cable/Sat TV |
| 190 Other Contract | 362 Personal Injury -Medical Malpractice | | **IMMIGRATION** | 863 DIWC/DIWW (405(g)) | 850 Securities/Commodities/ Exchange |
| 195 Contract Product Liability | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 462 Naturalization Application | 864 SSID Title XVI | 890 Other Statutory Actions |
| 196 Franchise | 440 Other Civil Rights | **HABEAS CORPUS** | 465 Other Immigration Actions | 865 RSI (405(g)) | 891 Agricultural Acts |
| **REAL PROPERTY** | 441 Voting | 463 Alien Detainee | | **FEDERAL TAX SUITS** | 893 Environmental Matters |
| 210 Land Condemnation | 442 Employment | 510 Motions to Vacate Sentence | | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 220 Foreclosure | 443 Housing/ Accommodations | 530 General | | 871 IRS--Third Party 26 USC § 7609 | 896 Arbitration |
| 230 Rent Lease & Ejectment | 445 Amer. w/Disabilities– Employment | 535 Death Penalty | | | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 240 Torts to Land | 446 Amer. w/Disabilities–Other | **OTHER** | | | 950 Constitutionality of State Statutes |
| 245 Tort Product Liability | 448 Education | 540 Mandamus & Other | | | |
| 290 All Other Real Property | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee– Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation–Transfer
- [ ] 8 Multidistrict Litigation–Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title 21, United States Code, Section 881(a)(6)

Brief description of cause:
Drug Related Forfeiture

**VII. REQUESTED IN COMPLAINT:**
CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, Fed. R. Civ. P.   DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:   [ ] Yes   [x] No

**VIII. RELATED CASE(S), IF ANY** *(See instructions)*:   JUDGE   DOCKET NUMBER

**IX. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)**
*(Place an "X" in One Box Only)*   [x] SAN FRANCISCO/OAKLAND   [ ] SAN JOSE   [ ] EUREKA-MCKINLEYVILLE

DATE 05/31/2018   SIGNATURE OF ATTORNEY OF RECORD   */s/*